# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re GIA PROVANZANO<br><br>Debtor.<br><br><br><br>GIA PROVANZANO<br>        Plaintiff,<br><br>  v.<br><br>NAVIENT SOLUTIONS, LLC,<br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4,<br><br>        Defendants. | Case No. 18-14727<br>Chapter 7<br><br><br><br><br><br><br>Adv. Pro. No. |

## PLAINTIFF'S COMPLAINT

Plaintiff Gia Provanzano files this Complaint against Defendants NAVIENT SOLUTIONS LLC ("NSL") and the NATIONAL COLLEGIATE STUDENT LOAN TRUSTS 2006-2, 2006-4, 2007-1, 2007-4 (individually as "NCT 2006-2," NCT 2006-4," "NCT 2007-1," "NCT 2007-4" and collectively as the "NCT Defendants") on personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

Not all loans made to students are non-dischargeable student loans, including the loans at issue in this action. In fact, only three types of educational loans are excepted from discharge under 11 U.S.C. § 523(a)(8): (1) federal loans and loans made directly by nonprofit colleges and universities; (2) conditional educational grants; and (3) qualified education loans made by private lenders. Defendants have originated and/or serviced dischargeable consumer loans that are not "educational loans" or "qualified education loans" as that term is defined in the Higher Education Act, the Internal Revenue Code, and the Bankruptcy Code. Such loans have no protection under section 523(a)(8) and are automatically discharged upon entry of a discharge injunction.

## I.

## PARTIES

**A.    Plaintiff**

1.    Gia Provenzano is a citizen of the State of Massachusetts residing in this District.

**B.    Defendants**

2.    NAVIENT SOLUTIONS, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. NAVIENT SOLUTIONS, LLC is a national company with its principal place of business in Wilkes-Barre, Pennsylvania.

3.    NATIONAL COLLEGIATE STUDENT LOAN TRUSTS 2006-2, 2006-4, 2007-1, 2007-4 are business entities that in the ordinary course engage in the ownership and collection of consumer debt. NATIONAL COLLEGIATE STUDENT LOAN TRUSTS 2006-2, 2006-4, 2007-1, 2007-4 are Delaware statutory trusts and can be served through their agent, Transworld Systems, Inc., located at PO Box 4275, Norcross, GA, 30091.

## II.

## JURISDICTION AND VENUE

4. This Adversary Proceeding is brought under Case Number 18-14727.

5. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b). This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt.

6. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601, 15 U.S.C. § 1692 and Federal Rules of Bankruptcy Procedure Rule 7001.

7. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

## IV.

## STATEMENT OF FACTS

**A.    The Distinction Between Non-Dischargeable And Dischargeable Educational Debt**

8. All federal student loans and loans made directly by non-profit colleges and universities are excepted from discharge under section 523(a)(8)(A)(i) absent an affirmative showing of "undue hardship."

9. Private education loans, on the other hand, have limited protection from discharge under section 523(a)(8)(B).

10. Section 523(a)(8)(B) of the Bankruptcy Code excepts from discharge "any other educational loan" that is a "qualified education loan" as defined in section 221(d)(1) of the Internal Revenue Code.

3

11. Section 221(d)(1) defines a "qualified education loan" as any indebtedness incurred solely to pay for "qualified higher education expenses." "Qualified higher education expenses" are in turn defined in section 221(d)(1) as expenses incurred to cover the "cost of attendance" at a Title IV eligible institution by an "eligible student." A Title IV eligible institution is one recognized by the Department of Education under Title IV of the Higher Education Act. "Cost of attendance" is term of art found in section 472 of the Higher Education Act at 20 U.S.C. § 1087ll, which includes tuition, fees, room, board, books, and living expenses (hereinafter referred to as "Qualified Student Loans").

12. Consumer loans made to persons to cover expenses at non-eligible institutions, expenses in excess of the "cost of attendance" or to ineligible students are not Qualified Education Loans, and are often times not even "educational loans" in the first instance. These loans remain dischargeable under the Bankruptcy Code (hereinafter referred to as "Consumer Education Loans").

13. Where confusion exists in determining whether an educational debt is a Qualified Education Loan or a Consumer Education Loan, the Bankruptcy Code places the burden on the creditor to establish by a preponderance of the evidence that the educational debt in question is excepted from discharge.[1]

14. Defendant NSL is fully aware of this distinction and has repeatedly warned sophisticated investors that although Qualified Student Loans are non-dischargeable, Consumer Education Loans have no protection in bankruptcy. Specifically, Defendant Navient has warned investors and the SEC that *only* loans made for qualified education expenses (*i.e.,* Qualified

---

[1] *See In re Bronsdon*, 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) ("The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8). Once the showing is made, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependents 'undue hardship.'").

Student Loans) are excepted from discharge in bankruptcy. For example, a Navient Supplementary Prospectus to Student Loan Trust 2015-3 Prospectus Dated June 3, 2015 specifically represented:

> Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans *made for qualified education expenses* are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that *the loans are not used for qualified education expenses*. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement.

15. Some creditors have also disguised their Consumer Education Loans as "nonprofit loans" in order to gain exception from discharge under section 523(a)(8)(A)(i).

16. Some of the Plaintiff's loans are held by certain National Collegiate Trusts.

17. The National Collegiate Trusts are a series of 15 securitized trusts containing more than $10 billion in securitized private student debt.

18. The National Collegiate Trusts were the brainchild and creation of the First Marblehead Corporation" (FMC").

19. During the early 2000s, FMC partnered with multiple large banks, such as JP Morgan and Bank of America, to originate private student loans that would be immediately purchased by FMC, and securitized into the National Collegiate Student Loans Trusts.

20. FMC also designed a way to give the loans the appearance of non-profit educational loans by absorbing a non-profit corporation called The Education Resources Institute and having TERI guaranty the student debts against non-payment.

21. Notably, TERI never funded any of the loans made under these programs—it merely agreed to conditionally guarantee some of them.

22. Whatever TERI might have begun as, by 2004, TERI was no longer a *bona fide* non-profit institution.

23. By 2004, TERI was merely a subsidiary of the First Marblehead Corporation whose profits inured directly or indirectly to the First Marblehead shareholders. *See First Marblehead Corp. v. House*, 541 F.3d 36, 39 (1st Cir. 2008) ("Due in part to the success of the TERI acquisition, First Marblehead became a publicly traded company in 2003, which resulted in a dramatic increase in the value of the company's stock.").[2]

24. TERI was housed in FMC's offices, and FMC absorbed most of their staff and origination and servicing responsibilities.

25. On the orders of FMC, TERI began bending and ignoring origination criteria in 2006 to feed the private student debt securitization market.

26. The loans being originated often times had 12-15% interest rates, and massive origination fees.

27. Because of this lending behavior, default rates on FMC loans swelled to over 50%.

28. Because of this increase in defaults, TERI was forced to file for bankruptcy protection in this Court in 2008.

29. During that time, TERI voided and rejected all of its guaranty agreements with the lending partners of FMC.

---

[2] *See also First Marblehead Corp. v. House, 541 F.3d 36, 40 (1st Cir. 2008)* ("Meyers and James both testified that the company struggled to obtain necessary financing and it was in a precarious financial situation until the successful acquisition of TERI in 2001.").

6

30. TERI also refunded hundreds of millions of dollars in guarantee fees to the originating banks and Defendants.

31. Whatever TERI guarantee may have existed on any of Plaintiff's loans has been voided by this Court, and the NCT Defendants should not be permitted to use the "dead hand" of TERI to render any of the Plaintiff's loans non-dischargeable.

32. Despite this, Defendants have continued to represent to bankruptcy courts across the country that its loans are still guaranteed by TERI and thus are non-dischargeable under section 523(a)(8)(A)(i).

**B.    Plaintiff Borrows Certain Loans and Files For Bankruptcy.**

33. Plaintiff attended Emmanuel College between 2004-2009.

34. During that time, Plaintiff received federal student loans, grants and scholarships.

35. During that time, Plaintiff also borrowed several "direct-to-consumer" loans from Defendants or their predecessors in interest (collectively the "Private Loans").

36. In 2006, Plaintiff borrowed one "direct-to-consumer" loan in the amount of $18,000 that was subsequently assigned to and is currently held by Defendant NCT 2006-2.

37. In 2006, Plaintiff borrowed one "direct-to-consumer" loan in the amount of $17,000 that was subsequently assigned to Defendant NCT 2006-4.

38. In 2007, Plaintiff borrowed one "direct-to-consumer" loan in the amount of $13,000 that was subsequently assigned to Defendant NCT 2007-1.

39. In 2007, Plaintiff borrowed one "direct-to-consumer" loan in the amount of $14,000 that was subsequently assigned to Defendant NCT 2007-4.

40. On August 20, 2008, Plaintiff borrowed one "direct-to-consumer" loan from JP Morgan Chase in the amount of $17,000 that was subsequently assigned to Defendant NSL.

41. On January 22, 2009, Plaintiff borrowed one "direct-to-consumer" loan from JP Morgan Chase in the amount of $17,367 at 12.5% interest that was subsequently assigned to Defendant NSL

42. Owing to circumstances beyond her control, Plaintiff filed for bankruptcy in this Court in April 2010 and received a discharge in July 2013.

43. This discharged all debts not excepted from discharge under section 523(a).

44. Notwithstanding her discharge, Defendants continued to demand payment on the Private Loans.

45. Defendant NCT 2006-2 in fact sued Plaintiff in state court seeking to reduce her discharged debt to judgment.

46. Because of this and other circumstances, Plaintiff filed for relief under chapter 7 of Title 11 in this Court in December 2018.

47. Plaintiff again listed all of these loans on her schedules out of an abundance of caution.

48. Plaintiff believes that these Private Loans were discharged.

49. In the alternative, Plaintiff requests discharge on the grounds of "undue hardship."

50. Plaintiff's current income is $ 2,300 per month.

51. Plaintiff's necessary and reasonable expenses are $3,008.

52. Plaintiff is a single mother currently battling prolactimona tumors and does not foresee her financial situation improving in the future. Plaintiff has one child dependent.

53. Plaintiff has made an honest and good faith attempt to repay these loans on the original terms over the last 10 years.

54. Repayment of the loans would therefore constitute an "undue hardship" on Plaintiff and Plaintiff's dependent.

## III.

## CLAIMS FOR RELIEF

**A.** **Count One: Determination of Dischargeability**

55. Plaintiff reallages and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

56. Plaintiff's Loans were discharged because they are not the type of student loans entitled to protection under section 523(a)(8).

57. In the alternative, Plaintiff is entitled to discharge of the Loans because repayment would constitute an "undue hardship."

58. Accordingly, Plaintiff prays this Court discharge his student debt in part or in total.

## IV.

## PRAYER

59. In light of the foregoing, Plaintiff requests that Defendants be cited to appear and judgment be entered against Defendants for:

**(1)** declaratory and injunctive relief;

(2) determination of dischargeability;

**(2)** other such relief as the Court deems just and proper.

Respectfully submitted,

May 15, 2019

/s/ Austin Smith

Austin Smith, NY Bar. # 5377254
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
Telephone: (917) 992-2121
Austin@acsmithlawgroup.com

10